UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-40 (JRT/LIB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HARSHKUMAR RAMANLAL
PATEL,
a/k/a "Dirty Harry,"
a/k/a Harry Patel,
a/k/a Param Singh,
a/k/a Haresh Rameshlal Patel,
a/k/a Harshkumar Singh Patel,

    Defendant.

**GOVERNMENT'S MOTION FOR DETENTION AND IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Laura M. Provinzino, Assistant United States Attorney, hereby moves for the pretrial detention of Harshkumar Ramanlal Patel, pursuant to 18 U.S.C. § 3142(f)(2).

## BACKGROUND

As recounted in the affidavit of Special Agent Manuel Jimenez, 23-mj-673 (TNL), Harshkumar Ramanlal Patel recruited co-defendant Steve Anthony Shand and paid him significant amounts of cash to transport Indian nationals coming in to the United States from Canada to Chicago. Defendant Patel, known to Shand as "Dirty Harry," directed Shand to make a total of five trips to the border in December 2021 and January 2022. Aff. SA Jimenez ¶ 21.

This included January 19, 2022, when, in the words of Canadian Prime Minister Justin Trudeau, a "mind-blowing tragedy" occurred. At least eleven Indian nationals attempted to make the harrowing crossing in -35°F blizzard conditions from Canada into the United States. One of the Indian nationals had to be airlifted to deal with injuries from the severe cold. A family of four with children ages 3 and 11 was found dead on the Canadian side—just yards from the border.

Patel and Shand communicated on WhatsApp—sending hundreds of messages to each other. *Id.* ¶ 50. These included specific pin drops for pick up locations and drop off locations. Patel was aware of the severe conditions on January 19, 2022. Shand told Patel: "Make sure everyone is dressed for the blizzard conditions please." Patel responded: "Done." Shand then noted: "We not losing any money." Patel was aware that Shand's passenger van had gone into a ditch as they communicated about Shand being "stuck." Patel then requested of Shand: "Can you please turn off the light and turn on your car light, so that they can see?" That didn't work. Shand was arrested. Patel dropped his phone. *Id.* ¶ 17.

Patel was charged by complaint in September 2023. *See* 23-mj-673 (TNL). Efforts were made to identify his location without success. Unexpectedly, he was arrested at the Chicago O'Hare Airport on February 21, 2024, while waiting outside to pick up his fiancé Meghaban Patel who was

returning from visiting family and wedding shopping in India. Meghaban Patel falsely told Customs and Border Patrol that her "brother" was picking her up and a search of her luggage uncovered documents such as birth certificates, identification cards, and diplomas belonging to other people. Upon arrest, Patel had a Maryland driver's license listing an incorrect date of birth. (The Maryland license lists 1994; Patel was born in 1995.) The license also lists an address in Upper Marlboro, Maryland. Of course, this information was not provided by Patel to USPPS. He instead claimed that he had resided in New York since he came to the United States in 2016.

Patel then made his initial appearance before the Honorable M. David Weisman in the Northern District of Illinois. In response to questions from U.S. Probation and Pretrial Services (USPPS), Patel could not remember the name of the woman he had married in 2018 nor her current whereabouts. Patel reported that he lived with his uncle in a townhome in New York, but he could not recall his uncle's contact information. Patel noted he was unemployed and financially supported by his uncle. Patel also reported that he has an expired passport from India. USPPS recommended detention based on the defendant's risk of nonappearance, including (1) Patel was not legally residing in the United States and was under removal proceedings; (2) Patel's background information was unknown and unverified; (3) Patel possessed a foreign passport; (4) Patel had minimal financial ties and no history of employment in

3

the United States; (5) Patel's self-reported mental health issues; and (6) Patel used many aliases. In addition, USPPS recommended detention based on the danger Patel presented to the community, including (1) the nature of the alleged offense of human smuggling; (2) Patel's background information was unknown and unverified; and (3) Patel's self-reported mental health issues. Patel waived a detention hearing.

On March 11, 2024, Patel made his initial appearance in the District of Minnesota before the Honorable Dulce J. Foster. Again, USPPS recommended that Patel be detained. Patel waived a detention hearing.

On March 21, 2024, a grand jury returned a 7-count superseding indictment against Patel, with four of those counts also naming Shand as a co-defendant. ECF No. 72. The indictment charges: conspiracy to bring aliens to the United States causing serious bodily injury and placing lives in jeopardy (Count 1); aiding and abetting bringing aliens to the United States causing serious bodily injury and placing lives in jeopardy (Count 2); bringing or attempting to bring aliens to the United States causing serious bodily injury and placing lives in jeopardy (Count 3); conspiracy to transport aliens causing serious bodily injury and placing lives in jeopardy; (Count 4); aiding and abetting the transport of aliens in the United States causing serious bodily injury and placing lives in jeopardy (Count 5); transportation of aliens in the United States causing serious bodily injury and placing lives in jeopardy

4

(Count 6); and transportation of aliens in the United States for the purpose of commercial advantage and private financial gain (Count 7).

Counts 1 through 6 carry a statutory penalty of 20 years. Count 7 carries a statutory penalty of 10 years. Under the United States Sentencing Guidelines, Counts 1 through 6 cross-reference to the second-degree murder guidelines, resulting in a sentence of 235 to 240 months without acceptance of responsibility and 168 to 210 months with such acceptance.

Patel moved to reconsideration of detention. ECF No. 82. Patel represents that since his last court appearance, his fiancé has offered to have Patel live with her and her parents in Savannah, Tennessee. Patel reports that his fiancé is an American citizen, has no criminal record, and is gainfully employed. *Id.* at 3.

## ARGUMENT

Patel should be detained pending trial because he presents both a flight risk and a danger to the public. This Court considers several factors to determine a defendant's risk of nonappearance and danger to the community. The factors include: (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the person, (3) the person's history and characteristics, and (4) the nature and seriousness of the danger that the person poses. 18 U.S.C. § 3142(g). A consideration of all the factors requires Patel's detention because a preponderance of the evidence shows that he is a

5

flight risk and clear and convincing evidence demonstrates his dangerousness to the community.

## II. Patel Presents a Flight Risk and a Danger to the Public

The Court must detain Patel pending trial if it finds that (1) a preponderance of the evidence shows that he poses a risk of nonappearance, or (2) clear and convincing evidence demonstrates that he is a danger to the community.

### A. The Nature of the Offense Involves Human Smuggling

First, the Court must consider the nature and circumstances of the offense charged. This factor demonstrates that Patel is both a flight risk and a danger to the public. Each of the first six counts carries a statutory sentence of up to 20 years in prison. Patel's advisory guidelines sentence is also significant. Facing such a lengthy sentence provides incentive for Patel to use his resources, such as an Indian passport and fraudulent driver's license from Maryland, to flee the jurisdiction. Patel is not lawfully present in the United States and an ICE detainer has been lodged.

### B. Weighty Evidence of Guilt

Second, the weight of the evidence counsels in favor of detention. 18 U.S.C. § 3142(g)(2). As demonstrated in the affidavit of SA Jimenez, evidence of Patel's recruitment of Shand and involvement in the human smuggling has been extensively corroborated. In the defendant's own words on WhatsApp.

Patel orchestrated at least five human smuggling events in December 2021 and January 2022—the last of which was fatal. Patel put profits above people.

### C. Patel has Contacts that Would Enable Flight from Prosecution

Third, Patel's personal history and characteristics show that he presents a flight risk. 18 U.S.C. § 3142(g)(3). Patel has no significant ties to the community. His mother and father purportedly reside in New Jersey, an uncle whose name he cannot remember is in New York where Patel has purportedly lived since 2016, yet Patel maintains a passport from India and driver's license from Maryland. The passport is valid through January 2026, and the Maryland driver's license through September 2027.[1] (Notably, Patel told USPPS his Indian passport had expired.) Patel's girlfriend lives in Tennessee. According to the bond report prepared by USPPS, Patel is unemployed and has self-reported mental health issues, so he would have no reason to stay in Minnesota or to return to Minnesota for Court. Patel has resources and connections to other countries, such as Canada and India, and has used multiple aliases and

---

[1] The United States will submit these documents, which contain PII, as exhibits at the detention hearing. They were produced in discovery at Bates 00000855, 00000884. While the United States intends to proffer based on information in SA Jimenez's affidavit and the bond reports, SA Jimenez will be available should the Court have any questions about the documents in relation to its detention consideration.

7

accessed fraudulent documents, such that he could flee the jurisdiction and avoid prosecution.

### D. Patel Presents a Danger to Others

Finally, Patel presents a serious risk to the general public. 18 U.S.C. § 3142(g)(4). He repeatedly sent Shand to the border during extreme winter conditions. On January 19, 2022, Shand was stuck in a snow bank and, instead of calling law enforcement or doing something to help the foreign nationals, the cold and blizzard-like conditions made it so many of the Indian nationals got disoriented and lost—and four died. After Shand was arrested, Patel immediately discontinued his cell service, and changed from a New York-based phone number to a Florida one.

### IV. There Are No Less Restrictive Measures that Would Ensure Patel's Presence and the Safety of the Community.

Detention is appropriate in this case because there are no less restrictive measures or combination of conditions that would sufficiently mitigate Patel's risk of flight and danger to the community. First, and most importantly, U.S. Probation and Pretrial Services has concurred that detention is appropriate in this case.

Patel's request that he be released to his fiancé and her family in Savannah, Tennessee, while it may mitigate some of the danger he poses, would not address the risk of non-appearance. (The government is uncertain if

the location and people in the home have been vetted by USPPS.) Patel still has ties to India and Canada and minimal contacts in the United States, including employment, property, and family. Patel has a current ICE detainer. Patel is a non-citizen who entered the U.S. illegally. His efforts are detailed in SA Jimenez's affidavit. ¶¶ 28–31. Patel is attempting to secure status through an earlier marriage in New York—yet he could not remember the woman's name or whereabouts when answering questions of USPPS. In addition to ties with foreign countries, Patel has ties to New York, Florida, and Maryland.

A halfway house is also an insufficient option. The Eighth Circuit has previously held that the serious nature and circumstances of an offense may alone suffice to warrant detention rather than a halfway house placement. *See United States v. Archibald*, No. 07-cr-52, 2007 WL 8321519, at *2 (S.D. Iowa Sept. 27, 2007) (citing *United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003) (holding that, although the defendant had no prior criminal history, the nature of the crime weighed heavily in favor of detention)*; see also United States v. Dodd*, No. 20-cr-16 (NEB/HB), 2020 WL 1547419, at *2 (D. Minn. Apr. 1, 2020). This is particularly true given that some of the halfway houses in the District are not locked facilities, meaning Patel, facing a significant time in prison, could walk out of the halfway house and disappear.

Nor is electronic monitoring a sufficient measure to ensure Patel's continued presence and the safety of the community. The preponderance of

9

the evidence shows that Patel's out-of-state and foreign connections, aliases, and access to travel and fraudulent identification documents, and the possibility of a long sentence in prison make him a flight risk. "While an electronic bracelet may somewhat mitigate the risk of flight, realistically, a defendant can take off long before the USPO and the United States Marshals Service realize that he has fled, putting great distance between the defendant and the police." *United States v. Baker*, 349 F. Supp. 3d 1113, 1134 (D.N.M. 2018); *see also United States v. Portz*, No. 19-cr-168 (MJD/HB), 2020 WL 1862364, at *4 (D. Minn. Apr. 14, 2020) (revoking this Court's release order and noting that "GPS monitors can be cut off, and it takes time for probation to respond to such an action").

The government has met its burden. Detention is appropriate based on Patel's risk of non-appearance and danger to the community.

## CONCLUSION

For the foregoing reasons, Patel should be detained.

Respectfully submitted,

Dated: April 25, 2024

ANDREW M. LUGER
United States Attorney

*s/ Laura M. Provinzino*
BY: LAURA M. PROVINZINO
Attorney Reg. No. 0329691
Assistant United States Attorney
300 South Fourth Street, Ste 600
Minneapolis, MN 55415