UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-40 (JRT/LIB)

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.

**(1) HARSHKUMAR RAMANLAL PATEL,**
   a/k/a "Dirty Harry,"
   a/k/a Harry Patel,
   a/k/a Param Singh,
   a/k/a Haresh Rameshlal Patel,
   a/k/a Harshkumar Singh Patel, and

**(2) STEVE ANTHONY SHAND,**

    **Defendants.**

GOVERNMENT'S MOTION *IN LIMINE* UNDER FED. R. EVID. 404(b) TO ADMIT *RES GESTAE* CONSPIRACY EVIDENCE

The United States of America, by and through its undersigned attorneys, hereby respectfully moves this Court *in limine* for an Order allowing the United States to introduce evidence at trial that the defendants conspired to bring aliens to the United States and to transport aliens within the United States between about December 9, 2021, and January 19, 2022, as res gestae evidence of the existence of a conspiracy and the structure of the conspiracy. In the alternative, the evidence is admissible under Fed. R. Evid. 404(b) to show the defendants' intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident. Additionally, the government moves this Court for an order allowing it to introduce evidence Defendant Patel possessed a

fraudulent Maryland driver's license at the time he was arrested, identifying him as a member of the conspiracy.

I. STATEMENT OF FACTS

The defendants knew each other prior to entering into a conspiracy to bring aliens into the United States in part because they lived in the same area of Florida and frequented certain gaming rooms. On or about December 9, 2021, the defendants met and came to an agreement for Shand to travel to northern Minnesota and North Dakota, where he would pick up alien migrants who would cross the border from Canada and transport them to Chicago. Their text messages capture their arrangements, and their cellphone location data places them in the same location. For example:



After a delay caused by the airline, Shand arrived in Minneapolis and drove to the border on December 11, 2021. His cellphone captured his location throughout the journey, and he repeatedly sent his location to Patel as he traveled. Late that night and early the next morning, the defendants coordinated the pickup of two groups of migrants via text message and phone calls. For example:



They also discussed the weather. On December 12, 2021, Shand told Patel, "It's 16 degrees cold as hell." Patel responded, "I know." Shand then asked "they going to be alive when they get here?" Evidently, they were. Shand's cellphone then tracked his location all the way to Chicago, Illinois, to an address given to him by Patel:



After Shand returned to Florida, he gave Patel his home address, and Shand's wife and coconspirator, Co-Conspirator 1 ("CC-1"), received money for the trip. Shand and CC-1 even argued about their respective shares of the payment:



Flight records, car rental agreements, and bank records show the same pattern on December 21-22, and 28-29, 2021, and January 10-11, 2022. Shand traveled to Minnesota, picked up a rental vehicle, and drove to the border. The defendants' messages show them haggling over payment:



As well as arranging flights and rentals, and coordinating the movement of migrants. Each time, they also discussed the dangerous cold. On December 21, 2021, Shand told Patel, "It's cold here 4 degrees," "the high is 12 degrees," "So tonight is going to be cold." On December 28, Shand told Patel, "It's -9 degrees," "Make sure everyone is worm [sic]". Patel responded, "ya sure boss." A day or two before each smuggling event and a day or two after, Patel paid Shand, who then deposited large amounts of cash into his bank account.

The same plan and pattern used on December 11-12, 21-22, and 28-29, 2021, and January 10-11, 2022, was repeated on January 19, 2022. The defendants arranged for Shand to fly to Minnesota, pick up a rental van, and drive it to the Canada/United States border. As on the past occasions, Shand's cellphone tracked his location as he drove north. The defendants then communicated by cellphone to coordinate the crossing of 11 alien migrants, despite acknowledging the dangerously cold conditions—as they had on previous crossings. Unfortunately, four migrants died on this crossing and two others suffered injuries from the cold before the United State Customs and Border Patrol arrived and arrested Shand.

After additional investigation, law enforcement identified Defendant Patel as the "Dirty Harry" who hired Shand and coordinated the crossings with coconspirators in Canada. On February 21, 2024, Patel was arrested outside

Chicago O'Hare International Airport while waiting for his Fiancée. On his person, Patel had a Maryland driver's license with a false date of birth and address. A cooperating witness separately confirmed that the larger human smuggling conspiracy of which Patel was a part had a contact inside the Maryland Motor Vehicle Administration who provided members of the conspiracy with Maryland driver's licenses. There is no evidence Patel has ever resided in Maryland.

## II. ARGUMENT

### a. Evidence of the Defendants' Ongoing Conspiracy from December 2021 to January 19, 2022, is Intrinsic to the Charged Conspiracy on January 19, 2022.

Evidence of a person's character is not admissible to prove they have a criminal predisposition. Fed. R. Evid. 404(a). However, evidence that is "intrinsic" to the charged acts is admissible. *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 2648 (2024), and *cert. denied sub nom*. Intrinsic evidence is that which "completes the story" of the charged crime, "logically ... prove[s] any element," or in some cases, "shows consciousness of guilt." *Id*. "In conspiracy cases, like this one, in which the government is required to prove the existence of an agreement between the conspirators . . . the government has considerable leeway in offering evidence of other offenses." *See United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) (internal citations and quotations omitted). In a conspiracy case, proving

that the defendants intentionally reached an agreement to commit a crime is an element of the offense, so evidence of uncharged bad acts is "proof of the existence of the conspiracy." *Id.* Evidence is also intrinsic if it shows "how the conspiracy came about" and "how it was structured." *See United States v. Watkins*, 591 F.3d 780, 784-85 (5th Cir. 2009) (finding two previous drug runs before the charged offense was "relevant to establish how the conspiracy was structured and operated, and thus intrinsic"); *United States v. Ceballos*, 789 F.3d 607, 621 (5th Cir. 2015) (finding a "strong basis to conclude" that a notebook ledger showing earlier dates in a smuggling conspiracy was intrinsic because it showed how the conspiracy was structured).

Here, the earlier smuggling dates—and the defendants' communications around them—are inextricably intertwined with the charged offenses, show the existence of a conspiracy, and demonstrate how Shand and Patel structured the conspiracy. The evidence shows the origin of their agreement on or about December 9, 2021, and the scheme they developed to carry out the conspiracy. It shows their planning, logistics, payments, and coordination culminating in the January 19, 2022, crossing. Importantly, it demonstrates their indifference to the danger the cold weather posed to the aliens they were smuggling and transporting in the month before four migrants froze to death. Furthermore, this evidence illustrates the roles Shand, Patel, and CC-1 played in carrying out the conspiracy. Patel hired Shand and CC-1, coordinated with

coconspirators in Canada, and communicated with migrants as they crossed. Shand picked up the migrants and transported them to Chicago. CC-1 arranged flights, accepted payments, and, on one occasion, drove migrants to the border. Because this evidence is directly probative of the charged crimes, it "does not fall within the ambit of Rule 404(b)." *See United States v. Aranda*, 963 F.2d 211, 214 (8th Cir. 1992).

### b. Even if Pre-existing Conspiracy Evidence is not Intrinsic, it is Nevertheless Admissible under Federal Rule of Evidence 404(b).

The Eighth Circuit has long held that "Rule 404(b) is a rule of inclusion, and, as such, if evidence [is] offered for permissible purposes [it] is presumed admissible absent a contrary determination." *United States v. Horton*, 756 F.3d 569, 579 (8th Cir. 2014) (alterations in original) (*quoting United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006)); *United States v. Williams*, 796 F.3d 951, 958 (8th Cir. 2015) ("Rule 404(b) is 'one of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination.'") (*quoting United States v. Wilson*, 619 F.3d 787, 791 (8th Cir. 2010)); *United States v. Adams*, 898 F.2d 1310, 1313 (8th Cir. 1989) (noting that Rule 404(b) is "a rule of inclusion, permitting admission of such evidence unless it tends to prove only the defendant's criminal disposition") (quotation omitted). "The ultimate question [is] whether the evidence is admissible to prove any relevant issue other than the character of the

defendant or his propensity toward criminal activity." *United States v. Thomas*, 593 F.3d 752, 758 (8th Cir. 2010) (citation and quotations omitted). In conspiracy cases, the rule is no different. *See*, *e.g.*, *United States v. Turner*, 583 F.3d 1062, 1066 (8th Cir. 2009) (admitting prior incidents of manufacturing methamphetamine to show the defendant had the intent to enter into charged conspiracy to manufacture methamphetamine.)

Here, even if evidence of four prior smuggling events by the defendants is not intrinsic, it is nevertheless admissible for numerous non-propensity purposes. These close-in-time and nearly identical events show the defendant's intent to enter into a conspiracy to smuggle and transport unlawful aliens for financial gain. The prior crossings show the defendants' preparation and plan to smuggle individuals in a remote, secretive location to transport them to their ultimate destination in Chicago, Illinois. It shows the defendants' knowledge of the unlawful status of the aliens and the danger posed to the migrants by the extreme weather conditions. The past crossings identify the defendants as participants by their distinctive acts in furtherance of the smuggling and transportation. Further, they will demonstrate the defendants were not mistaken in transporting the individuals or accidentally involved in the charged crimes. Any one of these non-propensity purposes is sufficient to permit admission of the evidence. That they all apply vitiates any danger of unfair prejudice to the defendants.

### c. Evidence Defendant Patel Possessed a Fraudulent Maryland Driver's License is Admissible Under Federal Rule of Evidence 404(b) to Identify him as a Member of the Conspiracy.

At trial, the government may call a cooperating witness who will testify that the Indian smuggling conspiracy had a member who was able to procure real but fraudulent driver's licenses from the Maryland Motor Vehicle Administration. The cooperating witness possessed such a license. When he was arrested Patel did, too. Patel's license had a false date of birth and false address but was otherwise a real Maryland license. The fact that he possessed a fraudulent Maryland license thus identifies Patel as a member of the human smuggling conspiracy and is admissible under Fed. R. Evid. 404(b).

Additionally, the license is probative of the defendant's identity as the "Dirty Harry" involved in this smuggling enterprise. Patel was known by many names during the course of the conspiracy. On the Maryland driver's license, he used the name "Haresh Rameshlal Patel," although his immigration paperwork uses the name Harshkumar Patel. The T-Mobile subscriber records for one of the key phone numbers (-0618) in this case—the number Patel was using throughout the conspiracy while communicating with Shand—has a subscriber with the name of "Haresh Patel." Thus, the Maryland driver's license on his person in the name of "Haresh Patel" provides evidence of his identity as the same person using the -0618 T-Mobile number during the conspiracy.

## III. CONCLUSION

For the foregoing reasons, evidence the defendants brought aliens into the United States and transported them within the United States on four prior occasions should be admitted as *res gestae* of the offense, or in the alternative for a permitted purpose under Fed. R. Evid. 404(b). Furthermore, evidence Patel possessed a fraudulent Maryland license should be admitted under Fed. R. Evid. 404(b).

Dated:  October 28, 2024                             Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Michael P. McBride*
BY: MICHAEL P. MCBRIDE
Assistant U.S. Attorney
MN Bar No. 0397292

Ryan Lipes
Trial Attorney
U.S. Department of Justice
NY Bar No. 5404843