# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Criminal No. 22-40 (JRT/LIB)

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

(1) HARSHKUMAR RAMANLAL PATEL
a/k/a "Dirty Harry,"
a/k/a Harry Patel,
a/k/a Param Singh,
a/k/a Haresh Rameshlal Patel,
a/k/a Harshkumar Singh Patel, and
(2) STEVE ANTHONY SHAND,

      Defendants.

GOVERNMENT'S
RESPONSE TO
DEFENDANT PATEL'S
MOTIONS IN LIMINE
1-6 (ECF 138-143)

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Assistant United States Attorney Michael P. McBride and Trial Attorney Ryan Lipes, respectfully submits this omnibus response to Defendant Harshkumar Patel's Motions in Limine 1-6 (ECF 138-143).

## I. Response to Motion in Limine #1 (ECF 138): Defendant's Immigration Status

Defendant Patel moves to bar the introduction of evidence about his immigration status. *See* ECF 138. To start, the government does not intend

to introduce evidence of Defendant Patel's immigration status. In other words, the government does not intend to introduce evidence of whether Defendant Patel has immigration status in the United States or what that immigration status is. Nor does the government intend to refer to him using any prejudicial terms related to his immigration status. *See, e.g., United States v. Cruz-Padilla*, 227 F.3d 1064, 1068-69 (8th Cir. 2000) (finding the government's comments about defendant's status as an "illegal alien" to be prejudicial in a drug conspiracy trial).

But the government does intend to introduce specific forms from Defendant Patel's Alien file, or "A-File,"[1] which are highly relevant to this case because the forms connect Defendant Patel to the phone number used to conspire with Steve Shand to smuggle aliens across the border. Indeed, the government expects that a key part of Defendant Patel's defense will be challenging the attribution of this phone number to him. Specifically, the government intends to introduce the following documents that Defendant Patel submitted and that were made a part of his A-File: (1) the Notice of Entry

---

[1] An A-File is an individual file for an alien that contains records from interactions with U.S. Citizenship and Immigration Services, Customs and Border Protection, and Immigration and Customs Enforcement. Courts have routinely found that A-Files are business and public records. *See, e.g., United States v. Ngombwa*, 2016 WL 111434, at *9 (N.D. Iowa January 10, 2016); *United States v. Caraballo*, 595 F3d 1214, 1226 (11th Cir. 2010); *cf., United States v. Lorenzo-Lucas*, 775 F.3d 1008, 1009-10 (8th Cir. 2014) (upholding admission of A-File documents over confrontation clause objection).

of Appearance (Form G-28), (2) the Application to Register Permanent Residence or Adjust Status[2] (Form I-485), and (3) the birth certificate, photo ID, and fingerprint card that Defendant Patel provided to immigration authorities.

Of course, these forms will necessarily convey to the jury that Defendant Patel has applied for some type of immigration status—in the case of Form I-458, it implies that one has applied for permanent residency. And it is important for the jury to understand what these forms are used for, including obtaining permanent residence, so that the jury understands that a person completing these forms has a strong incentive to provide accurate contact information, including a valid phone number.

The Court should thus deny Defendant Patel's motion in limine to the extent it would limit the introduction of this highly probative evidence.

## Factual Background

Throughout the charged conspiracy, Steve Shand communicated with Defendant Patel on a T-Mobile phone number ending in -0618. Using the -0618 phone number, Defendant Patel coordinated the smuggling of aliens across the Canadian border into vehicles rented by Steve Shand. *See* ECF 132

---

[2] The government plans to redact Part 2 of Form I-485, which details the immigration application type or filing category. Redacting this section should address most of defendant's concerns and limit the information about the defendant's specific immigration status.

(Government's Trial Brief) at 7-13 (outlining some of the text communications). On the day that Steve Shand was arrested, however, Defendant Patel switched to a new phone and new phone number. By the time Defendant Patel was arrested two years later, he no longer had the phone with the -0618 phone number. Thus, evidence that Defendant Patel used the -0618 phone number before and during the smuggling conspiracy is critical to establishing his identity as the person behind the -0618 phone number.

These three documents from Defendant Patel's A-File help prove that he is the person behind the -0618 number:

### 1. *The Notice of Entry of Appearance (Form G-28)*

The Form G-28 notices an attorney's appearance on behalf of a client in United States Citizenship and Immigration Services processes. The form requires that the client sign and date the form, and that the client provide contact information. In this case, the client was Defendant Patel. The form contains no other information about Defendant Patel's immigration status. Here, Defendant Patel signed the form and provided the -0618 phone number as his daytime and mobile phone number:

Additionally, the signature on this form ("H.R. Patel") appears similar to the signature on the Maryland driver's license in the name of Haresh Patel that the defendant was carrying on the day he was arrested.

### 2. The Application to Register Permanent Residence or Adjust Status (Form I-485)

The I-485 is used to apply for permanent residence. The form is signed under penalty of perjury. While this form includes information about the immigration application type that could reveal some information about a person's immigration status, the government intends to redact this sensitive information before presenting it to the jury.

Again, the government's focus here is on Defendant Patel's own representation on his application for permanent residency that his phone number was the -0618 phone number. Defendant Patel provided this handwritten phone number on the form. He also signed the form directly below the certification that the information was provided under penalty of perjury:



Here, again, the signature on the I-485 appears to match the signature on the Maryland Driver's license in the name of "Haresh Patel" that Defendant Patel had with him when he was arrested:





### 3. Fingerprints and Photograph

Finally, the government intends to introduce identity documents that Defendant Patel submitted to immigration authorities and that were made part of his A-File. These identity documents include a photograph, birth certificate, and fingerprint card. These identity documents further link Defendant Patel to the A-File, and thus further connect him to the -0618 phone number. At trial, the government anticipates that a fingerprint expert will testify that he compared Defendant Patel's arrest fingerprints with the fingerprints submitted for the A-File and determined that the fingerprints are from the same person – Defendant Patel.

**Argument**

These documents from Defendant Patel's A-File are critical to establishing Defendant Patel's identity as the person involved with Steve Shand in the alien smuggling conspiracy. The A-File documents link Defendant Patel to the -0618 phone number, and thus to text messages showing Defendant Patel's role in the smuggling conspiracy. *See United States v. Sahavneh*, 480 Fed. App'x 530, 534-35 (11th Cir. 2012) (upholding admission of defendant's A-File to show knowledge of and familiarity with immigration process in alien smuggling trial); *cf., United States v. Brik*, Crim. No. 15-CR-78, 2016 WL 3753080, at *8 (D. Minn. July 11, 2016) (admitting text messages that necessarily implied defendant was on probation because the messages showed defendant's knowledge of drugs in his urine). Because the forms are highly probative of Defendant Patel's identity and role in the smuggling conspiracy, the selected forms from the A-File are relevant at trial. *See* Fed. R. Evid. 401.

Moreover, the information from the A-File that the government intends to introduce has little to no prejudicial value. The government has limited the information to mostly biographical information on two forms submitted by Defendant Patel to U.S. immigration authorities. Indeed, there is nothing wrong in applying for permanent residence; in fact, obtaining a green card would likely be cause for celebration. *See Sahavneh*, 480 Fed. App'x at 534-35.

In *Sahavneh*, for example, the defendant argued that the jury might speculate that his immigration was the result of "wrongdoing" if the court admitted his A-File. *Id.* at 534. But—like what the government intends to do here—the government did not argue or imply that there was anything improper about the way Sahavneh obtained citizenship. *Id.* at 535. Thus, any danger of unfair prejudice was "minimal" and "did not outweigh, much less substantially outweigh, the probative value" of the defendant's A-File in an alien smuggling trial. *Id.*

That same analysis applies here too. This evidence is highly relevant because it connects Defendant Patel to a key phone number used in the conspiracy. Any small amount of prejudice from this evidence is not "substantially outweighed" by the highly probative value of this evidence. For these reasons, the Court should deny Defendant Patel's motion in limine to the extent it would limit the introduction of this highly probative evidence from Defendant Patel's A-File.

## II.   Response to Motion in Limine #2 (ECF 139): Crime Scene and Autopsy Photos

Defendant Patel also moves to exclude crime scene and autopsy photographs, as well as photographs of the victims while alive. *See* ECF 139. Notably, Defendant Patel "does not dispute" that the "victims died of exposure as a result of the severe cold." *See* ECF 139 at 1. But the government has

received no similar stipulation from co-defendant Shand.  In any event, the limited crime scene and "in life" photographs that the government intends to introduce are highly probative evidence that have little risk of unfair prejudice. The government does not intend to introduce autopsy photographs, as Canada did not produce any autopsy photographs to the government through its mutual legal assistance process.

## A. Crime Scene Photographs

The government intends to introduce a limited number of crime scene photographs from the Royal Canadian Mounted Police showing the bodies of the deceased Patel family.[3]  These photographs will provide the jury with highly probative evidence that tends to show the location of the Patel family near the U.S. Border (including that the Patel family was not attempting to cross near a port of entry), the terrain that the migrants were expected to walk though in freezing conditions as part of the smuggling conspiracy, and the clothes the victims were wearing for the border crossing.  And the photographs will show the jury how and in what condition the victims died.  *See United States v. Simpson*, 44 F.4th 1093, 1098 (8th Cir. 2022) (upholding admission of crime scene photographs that showing "the location and state of [the victim's] body when it was discovered" and that "tended to show the cause of death").

_____

[3] If needed, the government can provide the photographs to the Court for in-camera review.

These limited crime scene photographs thus connect the Patel family to the smuggling conspiracy and show how the smuggling conspiracy caused serious bodily injury and placed lives in jeopardy.

None of these photographs are so "gruesome or inflammatory" as to require exclusion under Federal Rule of Evidence 403. *See United States v. Petary*, 857 F.2d 458, 463 (8th Cir. 1988) (upholding admission of crime scene photographs unless they are "so gruesome or inflammatory that its prejudicial impact substantially outweighs its probative value"). The photographs here are, no doubt, much less "gruesome or inflammatory" than many crime scene photographs regularly admitted at trial. *See, e.g., United States v. Ortiz*, 315 F.3d 873, 897 (8th Cir. 2002) (upholding admission of "graphic" crime scene photographs showing "the victim's bloody corpse" because they had "significant probative value" that established how the victim died and corroborated other testimony); *Petary*, 857 F.2d at 463 (upholding admission of photographs of murder victim showing signs of a struggle and blood at the site); *United States v. Ingle*, 157 F.3d 1147, 1153 (8th Cir. 1998) (upholding admission of crime scene and autopsy photographs of murder victim).

Defendant Patel's motion to exclude the crime scene photographs should be denied.

### B. "In Life" Photographs

Additionally, Defendant Patel moves to exclude any photographs of the victims "while they were still alive." ECF 139 at 2. Generally, limited "in life" or "spark of life" photographs are permissible to "present the victim as a human being." *See United States v. Broussard*, 589 F. Supp. 3d 1031, 1038 (D. Minn. 2022) (internal citations omitted) (admitting "spark of life" photograph of each deceased victim in fentanyl distribution resulting in death case).

Here, however, "in life" photographs are even more relevant. A migrant smuggled into the United States on January 19, 2022, was carrying a backpack. Inside the backpack were children's clothing and diapers, as well as photographs of the deceased family found in Canada. The photographs appear to be passport-type headshots of each of the deceased victims. Thus, the photographs in the backpack connect the deceased victims to the other migrants smuggled into the United States as part of the defendants' conspiracy on January 19, 2022.

Given this highly probative evidence and the lack of any articulable prejudice that would stem from admission of these "in life" photographs, Defendant Patel's motion should be denied.

## III.  Response to Motion in Limine #3 (ECF 140): Request for Advance Notice of Testifying Witnesses

Defendant Patel next moves for an order that the Government reveal the identities of witnesses before the close of trial each day.  *See* ECF 140.  The government will endeavor to provide counsel with notice of witness scheduling to ensure a smooth trial without needless delays, subject to witness availability issues that may arise during trial.

## IV.  Response to Motion in Limine #4 (ECF 141): Character Evidence

Defendant Patel moves to preclude the government from eliciting opinion evidence from any testifying witness as to the truthfulness of Defendant Patel's past statements or any other personal opinions as to Defendant Patel's character.  *See* ECF 141.  Defendant Patel does not identify what, specifically, he is asking the Court to preclude other than broadly recapitulating the Federal Rules of Evidence.  For that reason, his motion should be denied as moot.

Federal Rules of Evidence 404(a) and 608 govern the use of character evidence at trial.  The admissibility of some evidence, such as Defendant Patel's character for truthfulness, depends on whether he testifies at trial.  For example, Defendant Patel could be cross-examined about false statements in his application for permanent residency.  *See, e.g., United States v. Yong Ping*

*Liu*, 288 Fed. App'x 193, 204-05 (5th Cir. 2008) ("The district court thus did not abuse its discretion in finding the government's cross-examination of [defendant] on the truthfulness of her answers in her own immigration form permissible under Rule 608(b).").[4]

The parties can make objections under Rules 404(a) and 608 when appropriate at trial. Without more of a factual basis, however, his motion is premature. Until then, Defendant Patel's motion should be denied.

## V.    Response to Motion in Limine #5 (ECF 142): Expert Witnesses

Defendant Patel moves in limine to prohibit the government from offering any previously undisclosed expert testimony. *See* ECF 142. This motion should be denied.

Defendant Patel asserts that the government "has yet to disclose expert witnesses." *See* ECF 142 at 1. That is not the case. The government has disclosed five expert witnesses. A week before Defendant Patel's motion, consistent with the Court's scheduling order, the government disclosed four of the expert witnesses. *See* ECF 145, Attachment 1 (Government's October 21,

---

[4] To be sure, should Defendant Patel testify at trial, the government may seek to cross-examine him about false answers on his immigration forms. For example, Defendant Patel said on his Form I-485 that he had never been denied a visa to the United States. However, he was denied visas multiple times: in August and September 2014, February 2015, and April 2016.

2024, Expert Disclosure Letter).[5]  The government also disclosed to defense counsel a fifth expert report for Craig Hellmann, a fingerprint specialist, on October 28, 2024—the same day that the government received the report from the forensics lab.  The next day, October 29, 2024, the government provided its Rule 16 disclosure obligations as to Mr. Hellmann, including providing his CV and previous expert testimony in a letter to counsel for both defendants.  *See* ECF 145, Attachment 2 (Government's October 29, 2024, Expert Disclosure Letter).

The defendant's motion should be denied for two reasons.  First, Defendant Patel's motion is moot because his factual premise is mistaken.  As detailed above, the government has disclosed experts to counsel for both defendants.

Second, as to the fifth expert, the defendant cannot show any prejudice to a small delay in disclosure. *See United States v. Waln*, 916 F.3d 1113, 1115 (8th Cir. 2019).  The fingerprint report was turned over on the day that the government received it (October 28) and Rule 16 disclosures were sent to counsel the following morning (October 29).  This still left three weeks before

---

[5] After receiving Defendant Patel's Motion in Limine, the government emailed Defendant Patel's counsel on October 29, 2024, questioning their assertion that the government did not disclose any expert witnesses and re-supplying the October 21, 2024, expert disclosure materials.  The government did not receive a response.

trial. In addition, "fingerprint evidence and analysis is generally accepted."

*See United States v. Collins*, 340 F.3d 672, 683 (8th Cir. 2003). And the report

matches Defendant Patel's arrest fingerprints to the fingerprints in his A-File,

a finding that was not unexpected and is corroborated by other evidence in

Defendant Patel's A-File (including photographs, signatures, and his birth

certificate).

For these reasons, Defendant Patel's Fifth Motion in Limine should be

denied.

## VI. Response to Motion in Limine #6 (ECF 143): 404(b)/609 Evidence of Prior Bad Acts

The defendant moves to prohibit evidence of prior bad acts in the

government's 404(b) notice, ECF 122. *See* ECF 143. The Government

separately filed a motion in limine to admit this evidence at ECF 125. In

response to this motion, the government incorporates ECF 125 by reference.

## <u>CONCLUSION</u>

For these reasons, Defendant Patel's motions in limine should be denied.


Dated: November 6, 2024                    Respectfully submitted,

                                           ANDREW M. LUGER
                                           United States Attorney


                              By:     */s/ Ryan Lipes*
                                           Ryan Lipes
                                           Trial Attorney
                                           U.S. Department of Justice
                                           N.Y. Bar No. 5404843
                                           (202) 514-4715
                                           Ryan.Lipes@usdoj.gov

                                           Michael P. McBride
                                           Assistant United States Attorney
                                           MN Bar No. 0397292